OPINION
{¶ 1} Plaintiff-appellant, Bradley M. Gibson, appeals the March 2, 2005 judgment of the Court of Common Pleas, Allen County, Ohio granting Defendant-Appellee, Combs, Reitz Co.'s motion for summary judgment. Although this appeal has been placed on the accelerated calendar, this court elects to issue a full opinion pursuant to Loc.R. 12(5).
 {¶ 2} The parties formed a general accounting partnership in 1989. There were originally four partners: Gibson, Defendant Richard Combs, Lee MacWhinney, and the defendant corporation. At that time the corporation was owned by Daniel Combs and John Reitz. Each partner executed a separate partnership agreement on November 21, 1989. Thereafter, both Reitz and MacWhinney left the partnership; they are not involved in the events from which the present litigation arose.
 {¶ 3} On April 8, 1999 Daniel and Richard Combs ("Combs'") approached Gibson and informed him of their desire to end their professional relationship with him. They held a brief meeting with Gibson wherein they informed him of their desire to "buy-out" his partnership interest. Various meetings were held over the next several months where the parties attempted to negotiate a mutually acceptable buyout arrangement. No agreement could be reached, and Gibson cleared out his office and removed his personal belongings from the building over the weekend of June 25, 1999. He then left a note for the Combs' indicating that all further contact should be through his attorney. The following Monday, June 28, 1999, the Combs' sent a "Notice of Dissolution" of the partnership to Gibson's attorney.
 {¶ 4} On July 1, 1999 the Combs' established a new accounting partnership; they continued to operate out of the same building with the same employees and they continued to serve the partnership's clients. Gibson established a new accounting practice as well. The record indicates that the Combs' informed Gibson through his attorney that they were going to send notification to their former clients of the dissolution of the former partnership, and they asked for his input. When they received no response, they sent notification letters out in September 1999; the vast majority of the clients choose to retain the Combs' as their accountants.
 {¶ 5} Gibson filed suit in the Court of Common Pleas, Allen County, Ohio on September 20, 1999. That suit was voluntarily dismissed on May 8, 2001, and Gibson re-filed an amended complaint on May 25, 2001. The amended complaint contained three causes of action. The first cause of action alleged that the Combs' breached fiduciary duties to Gibson by continuing to operate the partnership out of the same building and serving the same clients. The second cause of action sought a declaratory judgment as to the application of the Partnership Agreement. The third cause of action sought an order causing the winding up and termination of the partnership affairs. Gibson later attempted to amend his complaint to include allegations against the defendant corporation rather than against Daniel Combs in his personal capacity, as the corporation and not Combs was a partner. The trial court denied Gibson's motion for leave to amend.
 {¶ 6} The Combs' filed an answer and asserted affirmative defense under Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted. The trial court granted the 12(B)(6) motion as to counts one and two, but dismissed the motion with regard to the complaint for an accounting and winding up of the partnership in its September 4, 2002 judgment entry. A bench trial on that cause of action was held on July 28, 2003 and the trial court entered judgment on September 10, 2003. To complete the winding up and termination of the partnership the court ordered an equal distribution of the partnership assets, which had been placed into a trust account; each partner was to receive an amount in excess of $23,000.00. The record indicates that Gibson was paid his one-third share on December 10, 2003, and Gibson acknowledged that he received payment of his partnership share in his November 8, 2004 deposition.
 {¶ 7} Gibson then appealed to this court, asserting that the trial court erred both in refusing to grant him leave to amend his complaint and in granting the 12(B)(6) motion to dismiss on the first two counts of his complaint. In Gibson v. Combs, Reitz Co. et al., Allen App. No. 1-03-67, 2004-Ohio-919, we found that the trial court erred in refusing to permit Gibson to amend his complaint. Specifically, we found that the interests of justice would permit Gibson to amend his complaint so that he could set forth allegations against the partnership corporation. Due to our resolution of the first assignment of error, we did not issue a decision on the second assignment regarding the dismissal pursuant to Civ.R. 12(B)(6).
 {¶ 8} After remand, Gibson filed a second amended complaint with the trial court, again asserting three causes of action. Interestingly, he again does not assert any allegations of wrongdoing against the defendant corporation, which was the reason we held that he should be entitled to leave to amend his complaint. Instead, he asserts an entirely new legal theory of recovery. His three causes of action seek recovery for: (1) breach of contract for the Combs' alleged failure to pay him monies pursuant to the Partnership Agreement after they terminated him as a partner, (2) breach of the non-compete covenant in the Partnership Agreement, and (3) breach of fiduciary duty for their actions in "freezing out" Gibson from the partnership.
 {¶ 9} Accordingly, Gibson's new complaint alleges that he wasterminated as a partner on April 8, 1999 when the Combs' told him they wished to end their business relationship with him. He claims that the prior accounting and winding up of the partnership conducted by the trial court under count III of the first amended complaint was an involuntary
judicial dissolution and termination of the partnership, even though he filed the original action praying for that specific relief. He claims for the first time in his new complaint that he was no longer a partner at the time of the dissolution of the partnership.
 {¶ 10} The Combs' then filed a motion to dismiss the complaint and a motion for summary judgment. The trial court ruled in its September 14, 2004 judgment entry in favor of granting partial summary judgment; the court held that there had been a dissolution of the partnership and therefore, as a matter of law, Gibson's remedy for any wrongdoing prior to the dissolution was an accounting. The court also granted summary judgment on the breach of fiduciary duty claim, finding that Gibson had not alleged any breach of fiduciary obligations prior to dissolution, and therefore he had alleged no genuine issues upon which he could recover.
 {¶ 11} The Combs' filed a second motion for summary judgment, which was granted by the trial court in its March 2, 2005 judgment entry. In that entry the trial court ruled that there was no genuine issue of material fact concerning the termination of Gibson as a partner. The court granted the motion for summary judgment with respect to all of Gibson's claims. It is from this order that Gibson now appeals, asserting the following three assignments of error:
The trial court erred in determining that there was no genuine issue ofany material fact as to whether the plaintiff was terminated as anemployee of the partnership on April 8, 1999.
 The trial court erred in determining that the non-compete clause in thepartnership agreement has no application to the defendants' conduct.
 The trial court erred in determining that there is no genuine issue ofany material fact with respect to the defendants' breach of a fiduciaryduty owed to their partner, the plaintiff.
 {¶ 12} The standard of review for a grant of summary judgment is de novo. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129. Thus, a grant of summary judgment will be affirmed only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, summary judgment is not proper unless reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Id.; see Zivish v.Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-70. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmoving party. Murphyv. Reynoldsburg (1992), 65 Ohio St.3d 345, 360.
 {¶ 13} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitzeff v. Wheeler (1988),38 Ohio St.3d 112. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the nonmoving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ.R 56(E).
 {¶ 14} Gibson argues in his first assignment of error that there was a genuine issue of material fact surrounding his termination as a partner. He contends that he presented sufficient evidence to demonstrate that he was terminated by the remaining partners in the April 8, 1999 meeting when they indicated that they no longer wanted to work with him.
 {¶ 15} Gibson is barred from asserting this argument under the doctrine of collateral estoppel, or "issue preclusion." Collateral estoppel precludes one party from re-litigating an issue that has been "actually and necessarily litigated and determined in a prior action" between the parties. Goodson v. McDonough Power Equipment, Inc. (1983),2 Ohio St.3d 193, 195, 443 N.E.2d 978, 981.
 {¶ 16} In his original complaint, Gibson brought an action for an accounting, winding up, and termination of the partnership. In order to bring that action he must necessarily have been a partner at the time of dissolution; in that case the court determined that dissolution of the partnership occurred when the Combs' sent Gibson a notice of dissolution in writing on June 28, 1999. Therefore, the trial court has previously determined that Gibson was, in fact, a partner in the partnership when the notice of dissolution was sent, and he remained a partner until the partnership was wound up and terminated through the court's judgment in that action.
 {¶ 17} Moreover, Gibson's claim for relief seeking an accounting and winding up of the partnership went to trial and reached a final judgment; the trial court awarded each partner a one-third share of the proceeds of the partnership. Gibson has never challenged the trial court's determination of that issue. In fact, the record indicates that he accepted payment of that judgment. Accordingly, under the doctrine of collateral estoppel the issue of whether Gibson was a partner of the partnership at the time of dissolution has been "actually and necessarily litigated and determined." Gibson is therefore barred from now claiming that he was terminated as a partner before the partnership was dissolved in June 1999. Therefore, the first assignment of error is overruled.
 {¶ 18} Gibson's second assignment of error argues that the trial court erred in finding that there was no genuine issue of material fact regarding the issue of whether the Combs' breached a non-compete clause in the partnership agreement. Specifically, the agreement contained the following clause:
In the event of the termination of the employment of the partner forany reason, and in the further event that subsequent to such terminationthat partner shall enter the practice of public accounting or dataprocessing, or shall otherwise provide accounting services to any clientpreviously serviced by the partnership, or if any client serviced by thepartnership prior to the termination of the partner shall, subsequent tothe partner's termination, thereafter seek accounting or data processingservices from the partner * * *, it is mutually understood and agreedthat the partner shall pay to the partnership [specified damages].(Emphasis added).
Thus, pursuant to the plain language of the non-compete provision, the partner must have been terminated as a partner prior to the application of the provision.
 {¶ 19} As previously stated, the prior action for an accounting and winding up of the partnership already determined that Gibson, Richard Combs, and the corporation wholly owned by Daniel Gibson were partners of the partnership at the time of its dissolution. Therefore, the issue of whether either Daniel or Richard Combs had been terminated as a partner has been previously litigated in an action that had come to final judgment. Accordingly, Gibson is precluded from arguing that either was terminated as a partner. Therefore, he has presented no set of facts under which reasonable minds could conclude this action in his favor. His second assignment of error is therefore overruled.
 {¶ 20} In his final assignment of error, Gibson argues that there was a genuine issue of material fact concerning his claim that the Combs' breached a fiduciary duty owed to him as a partner. He asserts that they breached their duty to him by forming a new partnership and continuing to serve clients of the former partnership, thereby "freezing him out" of profits that would have been made by the partnership.
 {¶ 21} Under Uniform Partnership Law, dissolution of a partnership does not terminate partnership affairs; "after dissolution the partnership is not terminated but continues to exist as a partnership for the purpose of winding up partnership affairs and completing transactions begun but not completed prior to dissolution." Lebanon Trotting Ass'n v.Battista (1972), 37 Ohio App.2d 61, 65; see R.C. 1775.29. However, dissolution terminates a partner's authority to act on behalf of the partnership, "[e]xcept insofar as is necessary to wind up partnership affairs or to complete transactions already begun but not then finished * * *." R.C. 1775.32. Therefore, after a partnership is dissolved the partners are required to continue the affairs of the partnership until the business is wound up and the partnership is terminated.
 {¶ 22} In the instant case, Gibson argues that the Combs' breached a fiduciary obligation to him by continuing to operate the partnership and serve the partnership's former clients after June 28, 1999. However, under partnership law it is clear that at this point the clients are not "former clients" because the partnership had not been terminated. Therefore, the partners were required to continue the affairs of the partnership after the notice of dissolution; such action was necessary by them until the partnership had been terminated. Accordingly, those actions cannot form the basis for an action for breach of fiduciary duty.
 {¶ 23} Nor can the Combs' actions in setting up a new partnership form the basis for an action for breach of fiduciary duty. The record indicates that the Combs' formed a new accounting partnership and that Gibson, as well, started a new accounting practice after dissolution of the partnership. Notice was sent to all of the original partnership's former clients that the partnership had been dissolved. All of these actions took place after the partnership dissolution, and therefore no fiduciary duty between the partners existed. "Ohio law does not recognize a fiduciary duty to exist between partners * * * in post-dissolution affairs absent agreements to the contrary." Ohio Development Co. v.Ellis (Aug. 20, 1993), 2nd Dist. App. No. 13428, unreported. Once dissolution occurs, the partners' sole authority to act is with regard to winding up the partnership affairs; their fiduciary obligations to each other have ceased. See R.C. 1775.32(A).
 {¶ 24} Accordingly, Gibson has presented no set of facts upon which reasonable minds could conclude in his favor that the Combs' breached a fiduciary obligation to him after dissolution of the partnership. Based on the foregoing, the third assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
 Cupp, P.J., and Bryant, J., concur.