WATCHTOWER BIBLE AND TRACT
SOCIETY OF NEW YORK, INC.,
et al., Plaintiffs,

v.

VILLAGE OF STRATTON, OHIO,
et al., Defendants.

No. C2–99–526.

United States District Court,
S.D. Ohio,
Eastern Division.

Aug. 6, 1999.

Final Order Aug. 18, 1999.

---

736

Susan B. Gellman, Wolman, Genshaft & Gellman, Columbus, OH, Richard D. Moake, Associate General Counsel of Watchtower Bible and Tract Society of NY, Inc., Patterson, NY, Paul D. Polidoro, Patterson, NY, for plaintiffs.

Diane Richards Brey, Bricker & Eckler, Columbus, OH, Abraham Cantor, Concord, OH, for defendants.

### *MEMORANDUM ORDER*

SARGUS, District Judge.

On June 3, 1999, plaintiffs brought this action for preliminary and permanent injunctive relief seeking to enjoin defendants from enforcing a local Ordinance that allegedly interferes with plaintiffs' exercise of their constitutionally protected rights to freedom of religion, freedom of speech, freedom of the press, and due process of law. Plaintiffs, both religious organizations which include practicing Jehovah's Witnesses, allege that the Ordinance is unconstitutional on its face and as applied because it interferes with their First Amendment right to go door-to-door in the Village of Stratton as part of their religious belief that they should share the Gospel with others. Defendants assert that the Ordinance is a content neutral, narrowly tailored regulation designed to protect the privacy interests of its citizens.

The parties and counsel convened in St. Clairsville, Ohio on July 27, 1999 for a hearing related to the preliminary and permanent injunction issues before the Court. After hearing a day of testimony and upon full consideration of the parties' briefs, the Court ruled from the Bench on plaintiffs' application for preliminary and permanent injunctive relief. This Order serves to memorialize those rulings.

The Village of Stratton, Ohio is a small town of fewer than 300 residents located along the Ohio River. In 1998, the Village passed an Ordinance that regulated the activities of solicitors and canvassers in the town. Generally, the Ordinance was designed to protect the privacy rights of the Village residents. According to the testimony of Frank Bruzzese, Village of Stratton Solicitor, the Ordinance was constructed to protect the Village residents from "flim flam" con artists who prey on small town populations.

It is without question that the Village of Stratton, through the powers accorded Ohio municipalities under Article XVIII, Section 3 of the Ohio Constitution, has the authority to promulgate local laws concerning public health, safety, and welfare. *Cincinnati N & C Ry. Co. v. Cincinnati,* 71 F.2d 124 (6th Cir.1934). The valid police powers possessed by the various states and delegated to municipalities are, of course, restricted by the various rights set forth in the Constitution, particularly the First Amendment.

The Village Ordinance at issue is Ordinance No.1998–5, which includes solicitor registration requirements and regulations. The Court must first determine whether this Ordinance applies to plaintiffs as Jehovah's Witnesses. Section 116.01 is the introductory statement of the Ordinance that prohibits uninvited soliciting within the Village of Stratton.[1] The Court finds that Ordinance No.1998–5 does apply to plaintiffs because Jehovah's Witnesses are "canvassers" who visit homes in neighborhoods for the purpose of "explaining" their "cause," the Gospel of Jehovah. Therefore, the activities of the Jehovah's Witnesses are encompassed by the provisions of Ordinance No.1998–5.

By the terms of the Ordinance, if a person or entity seeks to engage in conduct defined in Section 116.01, such party must first obtain a valid permit. Section 116.03 of the Ordinance speaks to the registration requirements for potential Village canvassers.[2] No fee is required to obtain a permit. The Court finds that subsections (1 – 4) of Section 116.03(b) are valid, content neutral governmental regulations designed for the safety and security of the Village residents. Subsections (1 – 4) do not infringe upon plaintiffs' First Amendment rights of speech, religion, or free press. The Court views subsection (5), which requires listing the specific address of each private Village residence a Registrant intends to visit, as an onerous

---

1. Section 116.01 provides as follows:

    The practice of going in and upon private property and/or the private residences of Village residents in the Village by canvassers, solicitors, peddlers, hawkers, itinerant merchants or transient vendors of merchandise or services, not having been invited to do so by the owners or occupants of such private property or residences, and not having first obtained a permit pursuant to Section 116.03 of this Chapter, for the purpose of advertising, promoting, selling and/or explaining any product, service, organization or cause, or for the purpose of soliciting orders for the sale of goods, wares, merchandise or services, is hereby declared to be a nuisance and is prohibited.
    See Plaintiffs' Trial Exhibit 1.

2. Section 116.03 of the Ordinance states as follows:

    (a) No canvasser, solicitor, peddler, hawker, itinerant merchant or transient vendor of merchandise or services who is described in Section 116.01 of this Chapter and who intends to go in or upon private property or a private residence in the Village for any of the purposes described in Section 116.01, shall go in or upon such private property or residence without first registering in the office of the Mayor and obtaining a Solicitation Permit.

    (b) The registration required by subsection (a) hereof shall be made by filing a Solicitor's Registration Form, at the office of the Mayor, on a form furnished for such purpose. The Form shall be completed by the Registrant and it shall then contain the following information:
    (1) The name and home address of the Registrant and Registrant's residence for five years next preceding the date of registration;
    (2) A brief description of the nature and purpose of the business, promotion, solicitation, organization, cause and/or the goods or services offered;
    (3) The name and address of the employer or affiliated organization, with credentials from the employer or organization showing the exact relationship and authority of the Applicant;
    (4) The length of time which the privilege to canvass or solicit is desired;
    (5) The specific address of each private residence at which the Registrant intends to engage in the conduct described in Section 116.01 of this Chapter; and
    (6) Such other information concerning the Registrant and its business or purpose as may be reasonably necessary to accurately describe the nature of the privilege desired.

regulation that could potentially violate the exercise of constitutional rights. The burden of this provision, however, is cured by the Village allowing a Registrant to attach to the Registration Form a list of willing Village residents which is provided by the Mayor's office.[3] Failure on the part of the Village to make such lists readily available at no cost may render the Ordinance unconstitutional.

■ Subsection (6) requires applicants to provide information concerning the purpose of the canvassing activities "as may be reasonably necessary to accurately describe the nature of the privilege desired."[4] Just as business or political canvassers are required to be identified, Jehovah's Witnesses may also be required to state their business "as may be reasonably necessary to accurately describe the nature of the privilege desired." Ordinance No.1998–5, Section 116.03(b)(6). While lesser known organizations, particularly those marketing commercial products or soliciting only for contributions, may need to provide additional information, this Court finds that, in order for subsection (6) to meet constitutional scrutiny, the plaintiff need only note on the application that it seeks to canvass as part of the Jehovah's Witness ministry. Based upon this interpretation, the Court finds Section 116.03 of the Ordinance to be constitutional on its face.

The Court notes that several groups were granted permission to solicit within the Village outside the time limits set forth in Section 116.05 of the Ordinance. Specifically, at least six separate solicitors for school fundraisers were permitted to canvas the neighborhoods in Stratton after 5:00 p.m. See Defendants' Trial Exhibits 35 A–F. In the event that other groups, including plaintiffs, are denied a permit for the same number of hours, the Village will subject itself to future claims that the application of the Ordinance is not neutral and is violative of the First Amendment. At this juncture, the Court is not willing to reach such a conclusion, in that no such request for a similar permit has been made by either plaintiff.

■ The Court's greatest concern is the language set forth in Section 116.05 of the Ordinance which relates to time limitations of solicitations. Section 116.05 states that "[n]o activity permitted under authority of this chapter shall commence prior to 9:00 a.m. nor continue after 5:00 p.m. . . . ." The Court finds this provision of the Ordinance to be an invalid restriction of a canvasser's right to visit homes during reasonable hours. Section 116.05 unnecessarily chills the plaintiffs' First Amendment right to speech. Both solicitors or solicitees may be unavailable during these hours. In the summer months, these time limits exclude up to four hours of daylight, 5:00 p.m. to 9:00 p.m., during which constitutionally protected activities may occur.

■ It has long been recognized that any regulation of canvassing or soliciting "must be done, and the restriction . . . applied, in such a manner as not to intrude upon the rights of free speech and free assembly." *Thomas v. Collins*, 323 U.S. 516, 540–41, 65 S.Ct. 315, 89 L.Ed. 430 (1945). It is also beyond dispute that solicitation is a form of speech protected by the First Amendment. *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).

■ A municipality may lawfully act to protect the peaceful enjoyment of local homes by its citizens. *Wisconsin Action Coalition v. City of Kenosha*, 767 F.2d 1248, 1258 (7th Cir.1985). At the

---

**3.** The Court suggests that the Registrant be informed of this procedure somewhere on the Registration Form.

**4.** As the Court noted during the hearing, the exercise of a constitutional right is not a

"privilege" and to that extent the Ordinance mischaracterizes the issue. Such mischaracterization does not, however, by itself render the Ordinance unconstitutional.

same time, any such local regulation must be precisely tailored to advance the governmental interest in a manner least restrictive of First Amendment rights. *New Jersey Citizen Action v. Edison Tp.*, 797 F.2d 1250 (3d Cir.1986).

■ A number of circuit courts have invalidated local ordinances purporting to ban solicitation or canvassing during daylight hours. See *Wisconsin Action Coalition, supra;* and *New Jersey Citizen Action, supra.* Recently, in *Ohio Citizen Action v. City of Seven Hills*, 35 F.Supp.2d 575 (N.D.Ohio 1999), the Court invalidated a local ordinance imposing a 5:00 p.m. curfew on canvassing. As noted in *National People's Action v. Village of Wilmette*, 914 F.2d 1008, 1012 (1990), "[e]ven a temporary deprivation of a First Amendment freedom of expression is generally sufficient to prove irreparable harm."

The Court also notes that any citizen may post "no trespassing" signs and prevent entry by canvassers or solicitors. Local governments and police are certainly authorized to prosecute trespassers under appropriate criminal laws. It is, however, for citizens and not government to choose whether private property is to be a forum for the expression of First Amendment rights.

The Court finds that to the extent canvassing is limited to 5:00 p.m. in the evening, Section 116.05 of the Ordinance is unconstitutional on its face. The Court, therefore, **ORDERS** that Section 116.05 of the Ordinance be modified to allow covered activities, including welcome door-to-door solicitation, to occur during reasonable hours of the day. This may be easily accomplished by listing reasonable times on a month to month basis.

■ As a corollary issue, the Court notes that page three of the Registration Form consists of a listing of specific organizations or causes that a Registrant may check to more specifically identify itself. *See e.g.,* Defendants' Trial Exhibit 34–A. Item No. 6 reads "Jehovah [sic] Witnesses." No other religious group is listed separately or singled out on this list. In fact, item No. 17 of the listing reads, "Persons Affiliated with _____ Church _____." Although the Registration Form is an administrative form designed to facilitate compliance with the Ordinance, its language and its form must be content neutral. The Court finds that item No. 6 unnecessarily isolates the Jehovah's Witnesses as a group and **ORDERS** this item stricken from the Registration Form.

Finally, at the conclusion of the hearing and after completion of the presentation of evidence, defendants argued for the first time that plaintiff Watchtower Bible and Tract Society of New York, Inc. and the Wellsville, Ohio Congregation of Jehovah's Witnesses, Inc. are not proper parties to this action because both registrations with the Ohio Secretary of State had lapsed.[5] Plaintiff the Wellsville, Ohio Congregation of Jehovah's Witnesses, Inc. argued that during the time that its registration had lapsed, it was still a *de facto* corporation and still a viable legal entity able to bring suit. *See Antioch Baptist Church of Canton v. Jordan*, 1999 WL 333335 (1999) (citing *Hines v. Board of Education of the Cleveland City School District* (1985), 26 Ohio Misc.2d 15, 18, 499 N.E.2d 39, citing *I.J. Goldstein Company v. Mitchell* (1921), 14 Ohio App. 231). Plaintiffs presented testimony from Mr. Virsil Koontz, an elder in the Jehovah's Witness Congregation of Wellsville, who stated that he had no knowledge that the state registration of the local congregation or the national governing body of Watchtower corporation had lapsed at any time and that the congregation has continued to operate as if it was duly licensed.

The Court makes only a preliminary finding at this stage that defendants' mo-

---

**5.** The Court notes its displeasure with defendants for the untimeliness of this argument. The Court, which has otherwise been impressed with the lawyering in this matter, is dismayed that this issue was not raised earlier in the proceedings.

tion is not well-taken as to the Wellsville, Ohio Congregation of Jehovah's Witnesses, Inc. The Court, hereby, **ORDERS** defendants to brief the issue of whether the lapse of a corporate registration with the Secretary of State affects the legal capacity of the corporation. This brief shall be filed no later than July 29, 1999. Plaintiffs shall respond by August 5, 1999 with defendants reply brief due on August 12, 1999.

In sum, plaintiffs' motion for preliminary injunction is **GRANTED IN PART AND DENIED IN PART.** The Court finds that Ordinance No.1998–5 applies to plaintiffs. The Court further finds Ordinance No.1998–5, Section 116.05 to be an invalid, unconstitutional infringement upon plaintiffs' First Amendment rights. Finally, the Court reserves final ruling on the issue of whether plaintiff Watchtower Bible and Tract Society of New York, Inc. is a proper party to this action.

**IT IS SO ORDERED.**

### *ORDER*

Defendants have withdrawn their defenses regarding the capacity to sue by plaintiffs Watchtower Bible and Tract Society of New York, Inc. and Wellsville, Ohio Congregation of Jehovah's Witnesses, Inc. The issue of capacity to sue was left open after the Court heard testimony on plaintiffs' motion for preliminary and permanent injunction. With defendants having withdrawn their defense to this issue, the Court now issues a Final Order granting in part and denying in part plaintiffs' motion for preliminary and permanent injunction (Doc. 3). The Court incorporates by reference its reasoning and rulings from its August 6, 1999 Memorandum and Order.

This case is **DISMISSED.**

**IT IS SO ORDERED.**